UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MARJORIE H.** *on behalf of*
**NELSON L.**,

                        **Plaintiff**,

  vs.                                          3:18-CV-700
                                                          (MAD)
**COMMISSIONER OF SOCIAL
SECURITY**,

                        **Defendant.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**OLINSKY LAW GROUP**                **HOWARD D. OLINSKY, ESQ.**
250 South Clinton Street
Ste 210
Syracuse, New York 13202
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **DAVID L. BROWN, ESQ.**
**OFFICE OF REGIONAL GENERAL
COUNSEL**
Region II
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff commenced this action on June 14, 2018, pursuant to 42 U.S.C. § 405(g), seeking review of a decision by the Commissioner of Social Security denying Plaintiff's application for Social Security Disability Insurance ("SSDI"). *See* Dkt. No. 1. On October 14, 2014, Nelson L. ("Claimant") filed an SSDI application. *See* Administrative Transcript ("Tr.") at 243. This application was denied and Claimant made a timely request for a hearing in front of an

Administrative Law Judge ("ALJ"). *See id*. at 154, 160-61. A hearing was held before ALJ Kenneth Theurer on January 25, 2017. *See id*. at 36. On May 18, 2017, the ALJ issued a decision denying Claimant's application. *See id*. at 12. Claimant subsequently requested review by the Appeals Council, which was denied such review. *See id*. at 1, 243. On December 4, 2017, Claimant's mother, Marjorie H. ("Plaintiff") was substituted as a party upon Claimant's death. *See id*. at 241. Presently before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 10, 14. Plaintiff alleges that the ALJ's determination as to Claimant's RFC determination is not supported by substantial evidence. *See* Dkt. No. 10 at 18.

## II. BACKGROUND

On the application date of October 14, 2014, Claimant was thirty-four years old. *See* Tr. at 243. Claimant reported an eleventh-grade education, with a completed GED as well as past employment as a cashier and home health aid. *Id*. at 46-49, 256. At the time of his application, Claimant lived alone in a second-story walk-up apartment. *Id*. at 46. Claimant's medical issues began in 2008, when he was diagnosed with type-one diabetes mellitus with neuropathy. *See* Tr. at 948. In 2010, Claimant suffered an injury to his shoulder in an ATV accident. *Id*. at 359. Beginning in 2012, Claimant complained of symptoms consistent with lumbar radiculopathy. *Id*. at 1015. Claimant also indicated in his testimony that he suffered from gastroparesis. *Id*. at 52. For purposes of his SSDI application, Claimant alleged an initial onset date of May 9, 2014. *Id*. at 16. As the ALJ noted, Claimant suffered from the following severe impairments during the adjudicative period: insulin dependent diabetes mellitus, post-operative shoulder stiffness and limited range of motion, and scoliosis. *Id*. at 18.

Claimant suffered from diabetes-related maladies for a number of years, resulting in multiple hospitalizations. *See id*. at 570, 929, 934, 943, 1020, 1043. While Claimant reported a

number of episodes related to his diabetes mellitus, examinations revealed no evidence of loss of consciousness, apnea, or clonic-tonic activity. *Id*. at 935. An EEG completed in 2015, measuring activity in awake, drowsy, and sleep stages, found no abnormalities. *Id*. at 940. In addition to diabetes-related issues, Claimant also experienced issues with sensitivity and stiffness of his shoulder. *Id*. at 1245-1300. The medical records, however, do not indicate that the injury resulted in anything more than some pain and slight decreases in range of motion. *Id*. at 1270, 1276. Following surgery to repair his shoulder in 2015, Claimant's recovery appeared to be progressing well. *Id*. at 1301-19. As to Claimant's spinal issues, Claimant repeatedly complained of generalized tenderness throughout the lumbar spine and occasional bouts of pain in his lower back. *See id*. at 811, 818-19, 1218. Medical records from 2014 indicate that, while Claimant suffered from mild to moderate tenderness and limitations, no significant abnormalities were noted. *Id*. at 810-20. An examination conducted in January 2016 revealed that Claimant did not have significant sensory abnormalities or stenosis of his thoracic canal, and was neurovascularly intact. *Id*. at 1326-27. Evaluations of Claimant's spine resulted in findings of either no acute abnormalities or only mild or minimal irregularities. *Id*. at 1223, 1227.

### III. DISCUSSION

**A.      Standard of Review**

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the

3

>impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted). "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo

review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

B.   **The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Claimant had not engaged in substantial gainful activity since May 9, 2014, the alleged onset date. *See* Tr. at 18. At step two, the ALJ concluded that Claimant had the following severe impairments: insulin dependent diabetes mellitus, status post left shoulder capsulorrhaphy anterior and posterior biceps tenotomy with debridement and scoliosis. *Id*. At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that functionally equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21. The ALJ then found that Claimant

> ha[d] the residual functional capacity during the course of an [eight]-hour workday to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with some exceptions. He c[ould] only occasionally lift and/or carry up [to] ten pounds with his right dominant arm and no more than [five pounds] with his left non-dominant arm. He c[ould] sit for approximately six hours, stand or walk for approximately two hours in [an] eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling. The claimant should avoid working at elevated or unprotected heights or in conjunction with dangerous machinery. He should avoid exposure to extremes of cold or heat and respiratory irritants. The claimant need[ed] to alternate from a seated to a standing position or vice versa for no more than [five] minutes two times per hour while remaining on task.

*Id*. at 22. At step four, the ALJ found that Claimant was unable to perform any past relevant work. *Id*. At the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert. *Id*. at 28-29. The vocational expert testified that a hypothetical individual of Claimant's age, with his education, past relevant work experience, and RFC (as described above),

could perform the representative occupations of Charge Account Clerk, Document Preparer, and Addresser. *Id*. at 28. The ALJ relied on this testimony to determine that Claimant was not disabled as defined by the Social Security Act. *Id*. at 28-29.

**C.   Analysis**

Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence because the opinions upon which the ALJ relied did not include a functional assessment regarding Claimant's impairments. *See* Dkt. No. 10 at 18. Specifically, Plaintiff claims that the ALJ improperly relied solely on Dr. Ganesh's opinion, which did not provide a functional assessment of Claimant's impairments, after dismissing the opinions of Claimant's treating providers. *See id*. at 19. Plaintiff further argues that the ALJ violated his affirmative duty to develop the medical record by failing to obtain a function assessment of Claimant's impairments. *Id*. Plaintiff suggests that the ALJ violated his duty by failing to contact Claimant's treating providers in order to obtain additional information or ordering a consultative examination to obtain information about the functional impact of Claimant's impairments. *Id*. at 24-25. For the following reasons, Plaintiff's motion for judgment on the pleadings is denied.

  *1. Weighing the Opinion Evidence*

Plaintiff objects to the manner in which the ALJ weighed the available medical opinions. *See* Dkt. No. 10 at 21. Specifically, Plaintiff alleges that the ALJ erroneously rejected the opinions of Claimant's treating providers, Dr. Heather Finn, Nurse Practitioner Judy Pendell-McKee, and Physician's Assistant Michele Provost. *Id*. The treating physician rule states that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

[the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Medical opinions given by providers who are not an "acceptable medical source" are not subject to the treating physician rule. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Asrtue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a)). Physician's assistants and nurse practitioners are not "acceptable medical sources." SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006).

When an ALJ or Appeals Council refuses to assign a treating physician's opinion controlling weight, a number of factors must be considered to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c).

Here, Ms. Pendell-McKee, a nurse practitioner, and Ms. Provost, a physician's assistant, are not "acceptable medical sources," and their opinions are not subject to the treating physician rule. *See* SSR 06-03P, 2006 WL 2329939, at *2; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Accordingly, the only opinion at issue that is subject to the treating physician rule is the opinion of Dr. Finn. In evaluating the opinion of Dr. Finn, the ALJ concluded that the "opinions are not supported with relevant evidence or explanation and are vague in terms of the actual assesse[d] limitations." Tr. at 27. The ALJ noted that Dr. Finn concluded that Claimant was "very limited" with regard to lifting, carrying, pushing, pulling, and bending, and had moderate limitations with regard to walking, standing, sitting, and climbing stairs because of his spinal maladies. *Id*.

However, Dr. Finn relied on Claimant's subjective complaints of pain. *See id*. at 1358. Additionally, Dr. Finn's conclusions were inconsistent with other medical and record evidence. The record indicates that Claimant did not have difficulty bending, walking, standing, and sitting during various examinations. *See id*. at 811, 814, 818, 883, 926, 1327. The medical evidence indicates that while Claimant had mild deformities in his spinal canal, he was neurovascularly intact, did not have any upper motor symptoms, and had normal range of motion of his spinal column. *Id*. at 1327.

Upon review of the ALJ's decision, it is clear that the ALJ considered the level of support for Dr. Finn's opinion and the consistency of that opinion with the record as a whole. *See id*. at 27. The ALJ found Dr. Finn's opinion to be based solely on the subjective complaints of Claimant, which, if unsupported by medically acceptable clinical and diagnostic techniques, need not be given controlling weight. *See id*. at 27; *Baladi v. Barnhart*, 33 Fed. Appx. 562, 564 (2d Cir. 2002) (finding that an ALJ is not required to assign controlling weight to the opinion of a treating physician where the opinion is based on the claimant's subjective complaints of pain and unremarkable medical tests). After evaluating the opinions of the treating physician in light of the record and medical evidence, the ALJ found the opinion of the treating physician to be "inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128. Accordingly, the Court finds that the ALJ properly considered the weight of the medical opinions in relation to the record evidence and sufficiently explained the basis for his conclusion.

### 2. Residual Functional Capacity

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical and mental abilities,

symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *See id.*; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

When addressing a plaintiff's RFC, an ALJ is required to note how "the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and non-medical evidence (*e.g.*, daily activities, observations)." Social Security Ruling ("S.S.R.") 96–8p, 1996 WL 374184, at *7; *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Additionally,

> [t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

S.S.R. 96–8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004). An ALJ's failure to explain the evidence he or she relied upon in assessing RFC constitutes a ground for a remand. *See Compo v. Commissioner of Soc. Sec.*, No. 6:05–CV–973, 2009 WL 2226496, *9 (N.D.N.Y. July 23, 2009) (citation omitted); *see also Hodge v. Astrue*, No. 07–CV–0162, 2009 WL 1940051, *10 (N.D.N.Y. July 7, 2009) (citation omitted).

To properly ascertain a claimant's RFC, an ALJ must therefore assess the claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull. *See* 20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a. Nonexertional limitations or impairments, including impairments resulting in postural and manipulative limitations, must also be considered. *See* 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions

the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *See Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1998)). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the corresponding regulations. *See Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

"While the ALJ is required to take into account a claimant's reports of pain, symptoms, and other indicia of impairment, she is not required to accept those reports 'without question.'" *Genier v. Astrue*, 606 F.3d at 49; 20 C.F.R. § 416.929(a). Instead, he "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier*, 606 F.3d at 49 (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). The ALJ's credibility findings receive "special deference" because of his ability to observe the claimant's testimony. *See Yellow Freight Sys., Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994). Like other findings of the ALJ, the credibility finding is reviewed for whether it is supported by substantial evidence. *See Hopkins v. Colvin*, No. 13–CV–4803, 2014 WL 4392209, *5 (S.D.N.Y. Sept. 5, 2014); *Torres v. Colvin*, No. 12–CV–6527, 2014 WL 241061, *12 (S.D.N.Y. Jan. 22, 2014).

Plaintiff contends that the ALJ reached an erroneous RFC determination because the record lacked a functional assessment of Claimant's impairments, suggesting that the medical diagnoses and clinical data are not sufficient without translation of the data into functional terms. *See* Dkt. No. 10 at 19. As mentioned, "the RFC assessment must first identify the individual's functional limitations or restrictions and assess [claimant's] work-related abilities on a function-by-function basis. S.S.R. 96-8p, 1996 WL 374184, at *1. A residual functional capacity

determination is based on "all of the relevant medical and other evidence." *See* 20 C.F.R. § 404.1545(a)(3). The ALJ will take into consideration the physical and mental abilities of the claimant, abilities affected by the impairment(s), and the total limiting effects of impairments. *See* 20 C.F.R. § 404.1545(a)(5).

Here, with respect to Claimant's physical abilities, the ALJ, relying on the opinion of Dr. Ganesh, noted that Claimant demonstrated no gross limitations with sitting, standing, walking or the use of upper extremities. *See* Tr. at 27, 885. The ALJ concluded that, while not all of Dr. Ganesh's conclusions are fully consistent with the record evidence, most are supported by clinical findings. *See id*. The Court agrees. An examination of Claimant revealed a number of findings that supported the conclusion that Claimant did not demonstrate gross limitations in a variety of tasks. Specifically, Dr. Ganesh noted that Claimant was able to cook, clean, dress, shower, and go for walks without assistance and this evidence was not contradicted by Claimant's testimony. *Id*. at 46, 54-58, 883. Claimant could walk normally without assistive devices, get up and down off of an examination table, and was able to rise from a chair without difficulty. *Id*. at 883. While Dr. Ganesh noted some musculoskeletal irregularities, Claimant demonstrated full range of motion in his elbows, forearms, wrists, hips, knees, ankles, and right shoulder. *Id*. at 884. Finally, Dr. Ganesh noted a lack of muscular atrophy in Claimant's extremities and a five-out-of-five grip strength. *Id*. at 885.

Additionally, the ALJ did not rely solely on the opinion of Dr. Ganesh, but examined the record, found evidence of limitations that would require accommodation, and adjusted Claimant's RFC accordingly. *Id*. at 27. The ALJ found that Claimant suffered from some limitations that would require the option to alternate between sitting and standing, avoid conditions that might irritate his asthma, and avoid tasks that require heavy lifting. *Id*. at 22. It is clear that the ALJ

considered detailed information as to Claimant's physical abilities. Accordingly, the Court finds the ALJ's decision is supported by substantial evidence.

The ALJ also considered evidence of Claimant's mental abilities, according great weight to the conclusions of Dr. Jeanne Shapiro. *See* Tr. at 26. The ALJ noted that Claimant did not appear to have limitations in understanding and following simple instructions and directions or performing simple or complex tasks. *Id*. This conclusion is supported by a number of observations made by Dr. Shapiro during an examination of Claimant. Specifically, Dr. Shapiro noted coherent thought processes, intact attention and ability to perform various tasks, intact memory, average intellectual functioning, and an ability to understand and follow simple directions. *Id*. at 878-79. Thus, the ALJ's conclusion regarding Claimant's mental abilities is supported by substantial evidence.

The record is clear that the opinions upon which the ALJ relied in reaching his RFC determination included an examination of Claimant's functional capacities and limitations. Contrary to Plaintiff's assertion, the opinions of Dr. Shapiro and Dr. Ganesh include not only medical diagnoses and clinical data, but an examination of the functional impact of Claimant's limitations. Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

### *3. Duty to Develop the Record*

Plaintiff alleges that the ALJ violated his duty to develop the record by failing to obtain additional information regarding Claimant's functional limitations, either in the form of supplemental evidence from Claimant's treating providers or a consultative examination. Tr. at 24-25. If, after examining the evidence, the ALJ is unable to reach a conclusion, the ALJ "will determine the best way to resolve the inconsistency or insufficiency. The action(s) [ ] take[n] will

depend on the nature of the inconsistency or insufficiency." 20 C.F.R. § 404.1520b(b)(2). The record is insufficient "when it does not contain all of the information [ ] need[ed] to make [a] determination or decision." 20 C.F.R. § 404.1520b(b). However, "if all of the evidence [the ALJ] receive[s], including all medical opinion(s), is consistent and there is sufficient evidence for [the ALJ] to determine whether [the claimant is] disabled, [the ALJ] will make [a] determination or decision based on that evidence." 20 C.F.R. § 404.1520b(a).

Here, the ALJ was able to reach a conclusion as to disability based on the evidence provided. *See* Tr. at 29. As discussed above, the RFC determination of the ALJ is supported by substantial evidence. Because the ALJ was able to make a determination as to disability based on the extensive record before him, there was no need to contact Claimant's doctors to obtain additional information or order an additional examination. *See* 20 C.F.R. § 404.1520b(a). Accordingly the ALJ did not breach his duty to develop the record.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 30, 2019
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge